UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| EASTSTAR SOLUTIONS, LTD., and<br><br>CUI ENTERPRISES, LTD.<br>　　Plaintiffs<br><br>v.<br><br>RONALD OWENS,<br><br>OWENS SALES, LTD.,<br><br>VANOWENS FOOTWEAR,<br>　　Defendants | Case No. 2:16-cv-1551<br><br>Complaint |

EastStar Solutions, Ltd., and Cui Enterprises, Ltd. ("Plaintiffs") by their attorneys, Absolute Technology Law Group, LLC, allege their complaint against Ronald Owens, Owens Sales, Ltd., and Vanowens Footwear ("Defendants") as follows:

**PARTIES**

1.　　EastStar Solutions, Ltd. ("EastStar") is a Domestic Close Corporation, duly organized and existing under the laws of the State of Wisconsin. EastStar's principal place of business is 11801 W. Fairview Avenue, Milwaukee, WI 53226.

2.　　Cui Enterprises, Ltd. ("Cui") is a foreign corporation, duly organized and existing under the laws of the People's Republic of China. Cui's principal place of business is 4/F Wing Sing Commercial Center, Sheung Wan, Hong Kong, PRC.

3.　　Upon information and belief, Ronald Owens ("Owens") is an individual with a last known residence of 1418 S. Lakeshore Drive, Rockwall, TX 75087.

4.　　Upon information and belief, Owens Sales, Ltd. ("Owens Sales") is a Domestic Limited Partnership, duly organized and existing under the laws of the State

of Texas. Owens Sales' last known principal place of business is 1418 S. Lakeshore Drive, Rockwall, TX 75087.

5. Upon information and belief, Vanowens Footwear ("Vanowens") is a partnership or sole proprietorship. Vanowens' last known principal place of business was 1418 S. Lakeshore Drive, Rockwall, TX 75087.

## JURISDICTION AND VENUE

6. Plaintiffs bring their complaint under federal diversity jurisdiction, 28 U.S.C. 1332, as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

7. Plaintiffs further bring their complaint under federal question jurisdiction, 28 U.S.C. § 1338(a), as it is a civil action arising under an Act of Congress relating to trademarks.

8. Venue in this district is proper under 28 U.S.C. § 1391(b).

9. This Court has personal jurisdiction over Owens pursuant to Wis. Stat. § 801.05(1)(d) because Owens had purposeful, substantial and continuous contact with this District during the time of the alleged acts.

10. This Court has personal jurisdiction over Owens Sales pursuant to Wis. Stat. § 801.05(1)(d) because Owens Sales had purposeful, substantial and continuous contact with this District during the time of the alleged acts.

11. This Court has personal jurisdiction over Vanowens pursuant to Wis. Stat. § 801.05(1)(d) because Vanowens had purposeful, substantial and continuous contact with this District during the time of the alleged acts.

## **FACTS**

12.     EastStar is a closely held corporation located in Milwaukee, Wisconsin, engaged in the business of importing shoes and providing global supply chain management services to U.S. and Canadian retail outlets. EastStar's services include import/export compliance including warehousing, inventory tracking and analytics shipping and freight and retail distribution, customer service, returns, receivables, and packaging.

13.     EastStar was founded in 2007, and its owners, Greg Guerard ("Guerard") and Robert Steingart ("Steingart"), have over 30 and 25 years of highly specialized experience in global supply chain management, inventory tracking technology and infrastructure, and logistics, respectively.

14.     In 2010, EastStar established its own proprietary brand, and registered the MOJO MOXY, DOLCE BY MOJO MOXY, and various other trademarks to offer its own brand directly to retail buyers.

15.     EastStar's registrations include the following: MOJO MOXY (U.S. Registration No. 3,806,395), DOLCE BY MOJO MOXY (U.S. Registration No. 3,945,542), and JUST DOLCE BY MOJO MOXY (U.S. Registration No. 4,614,200), ("the Mojo Moxy Brands").

16.     The above-referenced federal trademark registrations are attached to this Complaint as Exhibits A-C, respectively.

17.     EastStar has a substantial investment in its global supply management infrastructure, tracking, and logistics systems required to reliably supply its retail customers with inventory under the Mojo Moxy Brands.

18.     EastStar invested substantial sums to develop advertising and branding, and to pay the salaries of its sales force.

19.     EastStar has spent eight years incrementally developing relationships with retail outlets to increase sales orders as retailers perceive the Mojo Moxy Brands as a

highly reliable source of shoes and associated customer service.

20. Many retail accounts are not profitable in the initial years, but it is necessary to service them to build the goodwill necessary for retailers to increase their orders to a profitable level and develop goodwill for the Mojo Moxy Brands.

21. Most U.S. shoes are produced in China, and EastStar's inventory is manufactured in China.

22. Cui is a Chinese company, solely owned by Grace Cui, which supplies shoes manufactured in China to EastStar.

23. Cui provides all necessary manufacturing, sourcing and negotiating services, overseeing the manufacture of shoes in China at multiple locations, and has successfully provided goods and logistic services to EastStar since 2007.

24. In 2009, EastStar and Cui entered into an exclusive agreement for EastStar to procure shoes bearing the Mojo Moxy Brands from Cui for its U.S. and Canadian outlets ("the Agreement").

25. EastStar hired Owens as its manufacturer's representative to provide sales services as EastStar's sales agent for shoes sold under the Mojo Moxy Brands and service new and existing retail accounts for goods associated with the Mojo Moxy Brands.

26. Owens had a contractual duty to represent and market EastStar to retailers to the best of his abilities in return for a commission on sales and exclusive rights to market shoes produced by EastStar and identified with the Mojo Moxy Brands to retailers in the U.S. market.

27. Owens was paid a commission for products associated with the Mojo Moxy Brands equivalent to a rate of approximately 6 to 11 percent for the years 2009 through 2016.

28. Owens' commission was paid to him through Owens Sales and

Vanowens.

29. Pursuant to his duties with EastStar, Owens was permitted to hire and supervise Gary Van Ackeren, Jessica Ulrich, Chad Floyd, Jay Yost, Lew Silverman, and Mike White as a sales force of independent contractors.

30. EastStar, Cui, and Owens performed according to a consistent and established course of dealings from the years 2009 to 2016, or for approximately 8 years.

31. Owens did not invest in EastStar or pay expenses associated with the development of the Mojo Moxy Brands owned by EastStar, had no exposure to risk of loss, and acquired no proprietary interest in the Mojo Moxy Brands.

32. In October 2015, Owens suddenly exhibited unusual behavior that was disruptive to business, accusing Grace Cui and Guerard of stealing from him, but could not explain his basis for the statements.

33. Throughout 2015 and 2016, Owens was prone to verbal outbursts and confrontations with staff, and verbal threats, in one case demanding that Guerard take a polygraph test.

34. In January of 2016, Guerard acquiesced to Owens' demands for a polygraph test, hoping to resolve the situation and restore the prior business relationship between EastStar Owens and Cui, and because Owens threatened to cancel orders from retail clients. (See Exhibit D – Declaration of Greg Guerard, attached to this Complaint.)

35. In October of 2015, Owens travelled to China and visited Cui's premises; he accused Grace Cui of padding bills, verbally abusing and intentionally humiliating her in front of her staff, yelling accusations that she was stealing from him.

36. During the visit, Owens coerced 20% of Cui's "profits," to which Owens was not entitled based on the established eight year course of dealings between parties, based on threats to cancel all U.S. orders.

Page 5 of 17

Case 2:16-cv-01551-NJ    Filed 11/18/16    Page 5 of 17    Document 1

37. Owens knew that cancelling US orders for goods would destroy her business, leaving her with $300,000 of unliquidated inventory and no way to pay workers or other expenses.

38. Owens vaguely stated in passing that he needed the money to recruit and hire additional sales people and because he was not making enough commission, but provided no accounting of such additional expenses and hired no new sales staff.

39. From October of 2015 to November of 2016, Owens continued to make similar threats to EastStar's owners, Guerard and Steingart, threatening in both verbal and written communications to cancel orders and to put them out of business. (See Exhibit E, attached to this Complaint.)

40. On November 1, 2016, Owens informed Guerard and Steingart that he was unilaterally severing his relationship with EastStar and Cui. (See Exhibit F, attached to this Complaint.)

41. In November of 2016, Guerard and Steingart learned that Owens had, without their knowledge, previously instructed a salesperson, Gary Van Ackeren, not to sell products from the Mojo Moxy Brands to their second-largest client, and to falsely inform the client that EastStar could no longer fill orders. (See Exhibit G – Declaration of Gary Van Ackeren, attached to this Complaint.)

42. This client was a major retail client that had placed over $1 million in orders for the preceding year alone.

43. Owens did not inform the Plaintiffs that he had canceled orders from their second largest customer; the Plaintiffs learned of this after the goods were in transit to fill the order.

44. On November 11, 2016, Guerard and Steingart learned that Owens had falsely represented to the public that Owens was the founder, CEO, and/or President of a fictitious company named Mojo Moxy and the sole owner of the Mojo Moxy and Dolce by Mojo Moxy trademarks. (See Exhibit H, attached to this Complaint.)

45. From October 2015 to November 17, 2016, eight additional retail clients who had previously ordered from EastStar for up to six years without any cancellations inexplicably cancelled over $332,000 worth of orders, as summarized in the following table:

| Customer | No. of years customer has ordered | No. of prior cancellations | Date of cancellation | Amount of cancellation |
|---|---|---|---|---|
| A | 6 | 0 | 2/23/2016 | $9,900.00 |
| B | 5 | 0 | 3/4/2016 | $528.00 |
| B | 2 | 0 | 6/7/2016 | $15,834.00 |
| B | 2 | 0 | 6/17/2016 | $7,368.00 |
| B | 2 | 0 | 6/20/2016 | $2,900.00 |
| B | 2 | 0 | 6/22/2016 | $3,306.00 |
| C | 2 | 0 | 1/20/2016 | $21,960.00 |
| C | 2 | 0 | 4/29/2016 | $288.00 |
| D | 3 | 0 | 4/7/2016 | $2,793.60 |
| E | 1 | 0 | 11/15/2016 | $9,912.00 |
| F | 2 | 0 | 2/29/2016 | $195,084.00 |
| G | 1 | 0 | 11/16/2016 | $27,930.00 |
| H | 4 | 0 | 5/2/2016 | $3,528.00 |
| I | 6 | 0 | 2/20/2016 | $4,560.00 |
| I | 6 | 0 | 5/11/2016 | $19,170.00 |
| I | 6 | 0 | 11/1/2016 | $7,920.00 |

46. Upon information and belief, Owens provided disparaging information to retailers as to Plaintiffs' ability to fill their orders and the quality of their products, inducing them to cancel their orders and refrain from making future orders.

47. Upon information and belief, Owens continued to provide this disparaging information after November 1, 2016 and to make other false representations to customers.

48. Upon information and belief, Owens continuing to disparage EastStar, the Mojo Moxy Brands, and to improperly divert EastStar sales.

49. Owens has maintained a personal email account under the email address

"mojomoxy1@aol.com" to which Owens has diverted business communications and records belonging to EastStar.

## COUNT I: BREACH OF CONTRACT

50. Plaintiffs reallege and incorporate by reference as if fully set forth herein the allegations contained in paragraphs 1 through 49.

51. Under the standard of *Matthews v. Wis. Energy Corp.*, 534 F.3d 547, 553 (7th Cir. 2008), the elements for a breach of contract in Wisconsin are a valid contract that was breached and damages flowing from that breach.

52. Owens failed to fulfill his contractual duties to represent EastStar to retailers to the best of his abilities in return for a commission on sales and exclusive rights to represent EastStar and the Mojo Moxy Brands in the U.S. market. Owens also failed to account for monies received from EastStar and Cui to procure additional salespersons. Owens breached his contractual duty to the Plaintiffs when he refused potential U.S. sales, cancelled existing sales orders, and failed to hire more salespersons.

53. Accordingly, Plaintiffs both lost potential revenue and failed to recoup the funds provided to Owens.

54. As a result of the breach of contract, Plaintiffs have incurred damages in an amount to be determined at trial.

## COUNT II: MISREPRESENTATION

55. Plaintiffs reallege and incorporate by reference as if fully set forth herein the allegations contained in paragraphs 1 through 54.

56. Under the standard of *Whipp v. Iverson*, 168 N.W.2d 201, 203–04, 43

(Wis. 1969), the elements of intentional misrepresentation require: (1) The representation must be of a fact and made by the defendant; (2) the representation of fact must be untrue; (3) the plaintiff must believe such representation to be true and rely thereon to his damage; (4) the defendant must either know the representation is untrue or the representation was made recklessly without caring whether it was true or false; and (5) the representation was made with intent to deceive and induce the plaintiff to act upon it to the plaintiff's pecuniary damage.

57. Under the standard of *Whipp v. Iverson*, 168 N.W.2d 201, 203–04, 43 (Wis. 1969), the elements of misrepresentation under strict responsibility require: (1) The representation must be of a fact and made by the defendant; (2) the representation of fact must be untrue; (3) the plaintiff must believe such representation to be true and rely thereon to his damage; (4) the misrepresentation must be made on the defendant's personal knowledge or under circumstances in which he necessarily ought to have known the truth or untruth of the statement; and (5) the defendant must have an economic interest in the transaction.

58. Owens represented to Plaintiffs that he was acting on their behalf and marketing products to retailers to the best of his abilities. Owens further represented that additional funds were necessary to recruit more salespersons and expand sales.

59. In fact, Owens was preventing sales, instructing salespersons not to make new sales and ending existing relationships with retailers, and did not recruit any additional salespersons.

60. Plaintiffs relied on Owens' representations and continued to utilize his services for sales. Plaintiffs also continued to provide funds to expand the sales force for several months.

61. Owens was well aware that by specifically instructing salespersons not to make new sales and informing customers that Plaintiffs would not take additional orders, he was not representing the Plaintiffs' interests.

62. Despite Owens' failure to hire any additional salespersons, he did not

return the funds provided him, but continued to demand additional funds to increase sales. Plaintiffs' outlay of funds has been to their detriment and Owens' profit.

63. As a result of these misrepresentations, Plaintiffs have incurred damages in an amount to be determined at trial.

## COUNT III: TORTIOUS INTERFERENCE WITH A CONTRACT

64. Plaintiffs reallege and incorporate by reference as if fully set forth herein the allegations contained in paragraphs 1 through 63.

65. Under the standard of *Shank v. William R. Hague, Inc.*, 16 F.Supp.2d 1038, 1042 (E.D.Wis., 1998), to prevail on a tortious interference claim under Wisconsin law, a plaintiff must satisfy five elements: (1) an actual or prospective contract existed between the plaintiff and a third party; (2) the defendant interfered with that contract or prospective contract; (3) the interference was intentional; (4) the interference caused the plaintiff to sustain damages; and (5) the defendant was not justified or privileged to interfere.

66. Owens intentionally interfered with multiple contracts and prospective contracts between EastStar and retailers.

67. Owens prevented retailers from making further orders and induced them to cancel existing orders, causing Plaintiffs to lose revenue from potential sales.

68. As a contractor to Plaintiffs, Owens was not privileged to dictate sales policy or terminate client relationships.

69. As a result of this tortious interference, Plaintiffs have incurred damages and will continue to incur damages in an amount to be determined at trial. Plaintiffs have suffered and will continue to suffer immediate and irreparable injury unless this Court enjoins the wrongful activities of the Defendants.

## COUNT IV: TARNISHMENT OF TRADEMARK

70. Plaintiffs reallege and incorporate by reference as if fully set forth herein the allegations contained in paragraphs 1 through 69.

71. Under the standard of 15 U.S.C. § 1125(a)(1), any person who, in connection with any goods or services, uses in commerce any false or misleading representation of fact, which in commercial advertising or promotion, misrepresents the nature, characteristics, or qualities of another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

72. In his communications with the public and sales communications with retailers, Owens has represented that he is the owner, President, and CEO of "Mojo Moxy." Owens has also falsely represented that he owns the Mojo Moxy Brands.

73. As a result of Owens' false and misleading representations of fact, retailers and other purchasers of goods may believe that EastStar's goods were in fact manufactured and sold by Owens and his fictitious "Mojo Moxy" company.

74. As Owens has severed his relationship with Plaintiffs, retailers and other purchasers of goods branded with the Mojo Moxy Brands may believe that EastStar is infringing Owens' trademark, resulting a loss of sales.

75. As a result of this tarnishment, Plaintiffs have incurred damages and will continue to incur damages in an amount to be determined at trial. Plaintiffs have suffered and will continue to suffer immediate and irreparable injury unless this Court enjoins the wrongful activities of the Defendants.

## COUNT V: TRADEMARK INFRINGEMENT

76. Plaintiffs reallege and incorporate by reference as if fully set forth herein the allegations contained in paragraphs 1 through 75.

77. Under the standard of 15 U.S.C. § 1114(1)(a), any person who shall, without the consent of the registrant, use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive, shall be liable in a civil action by the registrant.

78. In his communications with the public and sales communications with retailers, Owens has represented that he is the owner, President, and CEO of "Mojo Moxy." Owens has also falsely represented himself as the registrant and owner the Mojo Moxy Brands.

79. As a result of Owens' use of reproductions and imitations of EastStar's registered trademarks, retailers and other purchasers of goods may confuse the origins of EastStar's properly trademarked goods as belonging to Owens and his fictitious "Mojo Moxy" company.

80. As a result of this infringement, Plaintiffs have incurred damages and will continue to incur damages in an amount to be determined at trial. Plaintiffs have suffered and will continue to suffer immediate and irreparable injury unless this Court enjoins the wrongful activities of the Defendants.

## COUNT VI: BREACH OF FIDUCIARY DUTY WISCONSIN

81. Plaintiffs reallege and incorporate by reference as if fully set forth herein the allegations contained in paragraphs 1 through 80.

82. Under the standard of *Chapes v. Pro-Pac, Inc.*, 473 B.R. 295, 301 (E.D.Wis., 2012), to prove a claim for breach of fiduciary duty, a plaintiff must establish that: (1) the defendant owed the plaintiff a fiduciary duty; (2) the defendant breached that duty; and (3) the breach caused the plaintiff's damage.

83. Owens exclusively represented EastStar and its products to potential

Page 12 of 17

Case 2:16-cv-01551-NJ    Filed 11/18/16    Page 12 of 17    Document 1

clients in U.S. markets as an agent. Owens sold the products on behalf of EastStar, subject to approval by EastStar.

84. Owens failed to represent EastStar to the best of his ability, refusing potential sales and instructing salespersons under his control not to make sales.

85. As a result of Owens' conduct, EastStar has lost sales and suffered diminished recognition within the market.

86. As a result of Owens' breach, Plaintiffs have incurred damages and will continue to incur damages in an amount to be determined at trial. Plaintiffs have suffered and will continue to suffer immediate and irreparable injury unless this Court enjoins the wrongful activities of the Defendants.

## COUNT VII: DEFAMATION

87. Plaintiffs reallege and incorporate by reference as if fully set forth herein the allegations contained in paragraphs 1 through 90.

88. Under the standard of *Torgerson v. Journal/Sentinel, Inc.*, 563 N.W.2d 472, 477, 210 Wis.2d 524, 534 (Wis., 1997), the elements of a defamatory communication are: (1) a false statement; (2) communicated by speech, conduct or in writing to a person other than the person defamed; and, (3) the communication is unprivileged and tends to harm one's reputation so as to lower him or her in the estimation of the community or to deter third persons from associating or dealing with him or her.

89. In his communications with the public and sales communications with retailers, Owens has falsely represented that he, not EastStar, owns the Mojo Moxy Brands. Owens has also abruptly cancelled or ordered other salespersons to cancel orders with retailers and then disparaged Plaintiffs' ability to fulfill orders, deficiencies which he had caused.

90. As a result of Owens' false representations, retailers and other purchasers of goods branded with the Mojo Moxy Brands will believe that EastStar is infringing Owens' trademark, deterring sales contracts. Furthermore, retailers and other purchasers of goods branded with the Mojo Moxy Brands will believe that EastStar is incapable of fulfilling business obligations, reducing the likelihood that they will engage in future business dealings.

91. As a result of this defamation, Plaintiffs have incurred damages and will continue to incur damages in an amount to be determined at trial. Plaintiffs have suffered and will continue to suffer immediate and irreparable injury unless this Court enjoins the wrongful activities of the Defendants.

## **COUNT VIII: UNAUTHORIZED USE OF AN ENTITY'S IDENTIFYING INFORMATION**

92. Plaintiffs reallege and incorporate by reference as if fully set forth herein the allegations contained in paragraphs 1 through 95.

93. Under Wis. Stat. § 943.203(2), it is a class H felony to intentionally use, attempt to use, or possess with intent to use any identifying information of an entity without the authorization or consent of the entity and, by representing that the person is the entity or is acting with the authorization or consent of the entity, harm the reputation or property of the entity, or obtain credit, money, goods, services, or anything else of value or benefit.

94. Under Wis. Stat. § 943.203(1)(c), such identifying information includes any information or data that is unique to, assigned to, or belongs to an entity and that is intended to be used to access services, funds, or benefits of any kind to which the entity is entitled, as well as any other information that can be associated with a particular entity through one or more identifiers or other information or circumstances.

95. Under Wis. Stat. § 895.446, any person who suffers damage or loss by reason of intentional conduct that occurs on or after April 28, 1998, and that is

Case 2:16-cv-01551-NJ   Filed 11/18/16   Page 14 of 17   Document 1

prohibited under Wis. Stat. § 943.203, has a cause of action against the person who caused the damage or loss.

96. In his communications with the public and sales communications with retailers, Owens has represented that he owns the Mojo Moxy Brands, using EastStar's registered trademarks to lend credence to his assertions. Under this apparent authority, Owens has abruptly cancelled or ordered other salespersons to cancel orders with retailers, and disparaged Plaintiffs' ability to fulfill orders. Even after Owens terminated his relationship with the Plaintiffs, he has continued to use their identifying trademarks in email and other correspondence.

97. As a result of Owens' false representations and actions, retailers and other purchasers of goods branded with the Mojo Moxy Brands will or have already come to believe that EastStar is incapable of fulfilling business obligations, resulting in order cancellations. Furthermore, they may accept or have already accepted Owens' attempts to divert sales as an acceptable alternative proposed by EastStar instead of the unauthorized actions of a party who has severed ties with EastStar.

98. As a result of the unauthorized use of identifying information, Plaintiffs have incurred damages and will continue to incur damages in an amount to be determined at trial. Plaintiffs have suffered and will continue to suffer immediate and irreparable injury unless this Court enjoins the wrongful activities of the Defendants.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request judgment and relief against the Defendant as follows:

A. An award of Plaintiffs' damages, including prejudgment interest and post judgment interest;

B. Entry of an order (on a preliminary and permanent basis) requiring that

Defendants and their officers, agents, servants, employees, owners, and representatives, and all other persons, firms, or corporations in active concert or participation with them, be enjoined and restrained from:

    i. Contacting any of Plaintiffs' employees;

    ii. Contacting any of Plaintiffs' current or prospective customers;

    iii. Holding out that Defendants represent Plaintiffs in any capacity;

    iv. Making any representation that Defendants have any ownership interest in the Mojo Moxy Brands;

    v. Using the Mojo Moxy Brands on any websites, products, promotional materials, or communications in any false and/or deceptive manner; and

    vi. Committing any acts which will further tarnish the Mojo Moxy Brands.

C. An award to Plaintiffs of costs of this action together with Plaintiffs' attorney's fees pursuant to any applicable federal statute, state statute, or common law provision;

D. Any other remedy to which Plaintiffs are entitled pursuant to any applicable federal statute, state statute, or common law provision; and

E. Such other and further relief as the Court deems just.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues properly tried to a jury.

Dated this 18th day of November, 2016.

                                                    s/ Jill Welytok

                                                    Jill Welytok, Bar No. 1,019,616
                                                    Attorney for the Plaintiffs

                                                    Absolute Technology Law Group, LLC
                                                    3316 W. Wisconsin Avenue
                                                    Milwaukee, WI  53208
                                                    Telephone:  (414) 223-1670
                                                    Fax:  (414) 223-1671
                                                    Email:  jwelytok@abtechlaw.com