# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**EASTSTAR SOLUTIONS, LTD. And
CUI ENTERPRISES, LTD.,**
        **Plaintiffs,**

    v.                                                                           **Case No. 16-C-1551**

**RONALD OWENS,
OWENS SALES, LTD., and
VANOWENS FOOTWEAR,**
        **Defendants.**

## DECISION AND ORDER

In my last order in this case, I directed the parties to clarify certain facts relevant to subject-matter jurisdiction and denied the plaintiffs' motion to amend their complaint to add new defendants. The parties have clarified the jurisdictional facts, as I discuss below. In this order, I also address the parties' cross-motions for summary judgment and the plaintiffs' two recent motions for reconsideration of my decision to deny them leave to amend.

## I. SUBJECT MATTER JURISDICTION

The parties contend that I may exercise subject-matter jurisdiction over the state-law claims involved in this case under 28 U.S.C. § 1332. In my last order, I noted that the parties had failed to submit evidence showing that they are completely diverse. In response to my order, the parties submitted a stipulation identifying their respective citizenships. This stipulation makes clear that the parties are completely diverse. Plaintiff Cui Enterprises, Inc., is a Chinese corporation that has its principal place of business in China. Thus, for purposes of diversity, it is a citizen of China. Plaintiff

EastStar Solutions, Ltd., is a Wisconsin corporation that has its principal place of business in Wisconsin. Thus, for purposes of diversity, it is a citizen of Wisconsin. Defendant Ronald Owens is a natural person domiciled in Texas and is therefore a citizen of Texas. Defendant Owens Sales, Ltd., is a limited partnership. Its two partners are (1) a trust of which Ronald and Barbara Owens are both the trustees and the beneficiaries, and (2) a Texas corporation that has its principal place of business in Texas. Barbara Owens, like Ronald Owens, is domiciled in Texas. Thus, the limited partnership is a citizen of Texas. The parties' stipulation makes clear that the remaining defendant, Vanowens Footwear, is not a legal entity but rather is a trade name used by the defendants.

In short, the plaintiffs are citizens of China and Wisconsin and the defendants are citizens of Texas. Therefore, the parties are completely diverse, and jurisdiction is secure.

## II. PLAINTIFFS' MOTIONS FOR RECONSIDERATION

The plaintiffs have filed two motions that essentially ask me to reconsider my prior decision to deny them leave to amend to add as defendants Barbara Owens and the trustee of the trust that is a partner of Owens Sales. The first motion is entitled "motion for reconsideration based on newly discovered evidence," and the second motion is entitled "motion for relief pursuant to Rule 17(a) from defendants' failure to name real party in interest." In these motions, the plaintiffs argue that the partners of Owens Sales, Ltd., are the real parties in interest and therefore should be substituted for Owens Sales, Ltd., as defendants and as counterclaim plaintiffs. Their argument is incorrect. A Texas limited partnership may sue or be sued in its own name. *See R&R*

*White Family Ltd. P'ship v. Jones*, 182 S.W.3d 454, 458 (Tex. Ct. App. 2006). Moreover, the plaintiffs' claims are directed at the partnership itself rather than the individual partners, and the partnership seeks to prosecute a counterclaim on its own behalf. Therefore, it is the partnership who is the real party in interest. The plaintiffs' two motions for reconsideration will be denied.

### III. MOTIONS FOR SUMMARY JUDGMENT

The defendants have filed a motion for summary judgment seeking dismissal of the plaintiffs' claims against them. The plaintiff has filed a motion for summary judgment seeking dismissal of the counterclaims brought by Owens Sales.

**A.     Summary Judgment Standard**

Summary judgment is required where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, I take evidence in the light most favorable to the non-moving party and must grant the motion if no reasonable juror could find for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986).

To determine whether there is a genuine dispute as to a material fact, I use this court's local rules regarding summary-judgment procedure. *See* Civil L.R. 56(b) (E.D. Wis. 2010, rev. 2015). Under this procedure, the moving party submits a statement of proposed material facts as to which the moving party contends there is no genuine issue. Civil L.R. 56(b)(1)(C). This statement must contain specific references to the affidavits, declarations, parts of the record, and other supporting materials relied upon to support the proposed facts. *Id.* The party opposing summary judgment must respond

3

to each proposed fact and, for those facts that the party denies, must specifically reference the affidavits, declarations, parts of the record, and other supporting materials that support the non-movant's position. Civil L.R. 56(b)(2)(B)(i). The party opposing summary judgment may file its own statement of additional facts that support the denial of summary judgment. Civil L.R. 56(b)(2)(B)(ii). The moving party must respond to the non-movant's proposed additional facts and must cite any parts of the record relied upon. Civil L.R. 56(b)(3)(B). Any uncontroverted statements of fact are deemed admitted for purposes of summary judgment. Civil L.R. 56(b)(4).

**B.     Background**

In 2007, plaintiff EastStar Solutions, Ltd., began purchasing shoes from its co-plaintiff, Cui Enterprises, Inc., and selling them to retailers in the United States. Cui, a Chinese company owned by Grace Cui, procured the shoes from factories in China. The price that Cui charged to EastStar was a "fully loaded fixed unit price for each pair of shoes." (Decl. of Robert Steingart ¶ 4, ECF No. 31-5.) This price included Cui's overhead, its cost of producing the shoes, and a reasonable profit margin. (*Id.* ¶ 5.)

In 2009, the plaintiffs discussed the possibility of working together with Ronald Owens to manufacture, promote, and sell footwear under the brand name "Mojo Moxy." (Def. Stmt. of Add'l Facts ¶¶ 1, 9, ECF No. 58.) That year, the parties began operating under an arrangement in which Cui would procure shoes from factories in China, EastStar would provide "operational and logistics support," and Owens would be in charge of product development and sales. (*Id.* ¶¶ 7–9.) Although the parties generally agree that this was their arrangement, they disagree as to how to legally characterize it. Owens contends that the parties formed a joint venture and agreed to split the venture's

profits. According to Owens, Cui was to receive 50% of the venture's profits, Owens was to receive 30%, and EastStar would receive 20%. The plaintiffs deny that the parties formed a joint venture. Instead, they contend, EastStar simply hired Owens as its sales agent and agreed to pay him a commission on sales. However, EastStar agrees that the "commission" it paid to Owens was 30% of the profits the parties earned on the sales of shoes. (Decl. of Greg Guerard ¶ 9, ECF No. 31-2 (between 2009 and 2016, Owens received a commission under a "formula whereby Owen[s] received 30% of the profits calculated as the gross amount of retail sales less costs attributable to sales").)

The parties operated under their arrangement from 2009 until November 1, 2016, when Owens terminated his relationship with the plaintiffs. In the months leading up to the termination, the parties were embroiled in bitter disputes over a number of issues. Although the evidence in the record does not reveal exactly what the disputes were about, it seems that Owens accused EastStar and Cui of stealing from him, and that EastStar thought that Owens was making too few sales. The dispute became so heated that Owens demanded that one of EastStar's owners, Greg Guerard, take a polygraph test. Owens also sent a number of emails to the principals of EastStar and Cui in which he levelled personal insults at them, used a great deal of profanity, and threatened to cancel orders that customers had placed if the plaintiffs did not pay him what he thought he was owed. (Compl. Ex. 5, ECF No. 1-5; Decl. of Ronald Owens Ex. 3, ECF No. 60-3.)

After Owens left the business, the plaintiffs commenced this action against him and Owens Sales, contending primarily that he carried through on his threat to cancel

orders and thereby deprived the plaintiffs of the profits they would have earned on those orders. Owens denies that he cancelled any orders. He also filed a counterclaim against the plaintiffs, in the name of Owens Sales, alleging two distinct claims. First, he alleges that the plaintiffs failed to pay him his share of the joint venture's profits for orders that were in process at the time that he quit. Owens contends that he was paid his share of the profits for September 2016, but that he is still owed his share of the profits for October 2016 and for any later months in which profits were earned based on sales that were in the pipeline at the time that he quit.

Owens's second counterclaim alleges that, throughout the entirety of the parties' relationship, Cui Enterprises had been adding a secret profit to the unit price of the shoes that it charged to the alleged joint venture. Owens contends that, under the terms of the joint venture, Grace Cui was to procure shoes from factories in China and then report the price that she paid for the shoes as a cost of the joint venture. Cui would then be compensated by receiving 50% of the profits earned on sales. Owens alleges that, in violation of the terms of the joint venture, Cui added a profit margin for herself to the unit price of the shoes when she reported that price to the joint venture. Thus, Owens argues, Cui was paid twice: once when she added a profit margin to the unit price of the shoes, and a second time when she received 50% of the joint venture's profits. Owens contends that Cui's adding this secret profit to the unit price of the shoes had the effect of diluting his own share of the joint venture's profits and thus constitutes conversion and civil theft.

Owens has moved for summary judgment on the plaintiffs' claims against him. He argues primarily that the plaintiffs have not pointed to evidence from which a

6

reasonable jury could find that he actually cancelled customer orders. The plaintiffs, in turn, have moved for summary judgment on Owens's counterclaims. They contend that because they provided him with monthly accountings showing the revenues earned and the costs of sales, he has waived any claim that the costs reported by Cui were inflated. They also contend that Owens is not entitled to profits for periods after September 2016.

**C.      Discussion**

I begin with the defendants' motion for summary judgment on the plaintiffs' claims. In their complaint, the plaintiffs alleged a number of different claims and legal theories. However, they have since withdrawn or abandoned a fair number of them. I identify the claims that are no longer at issue in the margin.[1] The plaintiffs' remaining claims are all based on their allegation that Ronald Owens acted on his threats to cancel customer orders. They allege that he actually cancelled a large number of orders, totaling over $332,000 in revenue, between October 2015 and November 2016. (Compl. ¶¶ 39–48.) The plaintiffs allege that Owens cancelled these orders by "providing disparaging information to retailers as to Plaintiffs' ability to fill their orders and the quality of their products, inducing them to cancel their orders and refrain from

---

[1] The complaint alleges eight counts: (1) breach of contract, (2) misrepresentation, (3) tortious interference with contract, (4) tarnishment of trademark/false advertising, (5) trademark infringement, (6) breach of fiduciary duty, (7) defamation, and (8) unauthorized use of an entity's identifying information. In their brief in opposition to the defendants' motion for summary judgment, the plaintiffs state that they have abandoned their "advertising" claim (Count 4) and their "identity theft" claim (Count 8). (ECF No. 63 at 2, 3.) In a separate motion to amend their complaint, the plaintiffs confirmed their desire to withdraw these two claims and also withdrew their claims for trademark infringement and breach of fiduciary duty. (ECF No. 64 at 1.) Finally, the plaintiffs did not respond to the defendants' argument that summary judgment is proper on the misrepresentation count (see ECF No. 63 at 1–3), and thus I conclude that they have abandoned their misrepresentation claim.

making future orders." (Compl. ¶ 46.) For purposes of this motion, I will assume that if Owens actually cancelled customer orders out of spite, as the plaintiffs allege, then he would be liable to the plaintiffs under some legal theory, such as breach of contract, tortious interference with contract, defamation, or violation of the duties he owed to the plaintiffs under agency law.

In his motion for summary judgment, Owens contends that the defendants have not produced evidence from which a jury could reasonably conclude that he cancelled any of the orders identified by the plaintiffs in their complaint or in discovery. In their Civil Local Rule 56(b) statement of facts, the defendants propose as an undisputed fact that "Owens never cancelled any orders for Mojo Moxy shoes." (ECF No. 51 ¶ 25.) The defendants support this fact by citing Owens's own declaration, in which he denies ever having cancelled an order. (Decl. of Ronald Owens ¶ 5, ECF No. 40.) In their response to this proposed fact, the plaintiffs state that "[d]efendant's unsubstantiated declaration contradicts the emails he admittedly sent threatening to cancelling [sic] orders, and the coincident timing of the cancellation of multiple orders." (ECF No. 63 at 11.) The plaintiffs then cite an exhibit to their complaint, which consists of emails sent by Owens to the plaintiffs on April 30, 2016 and November 11, 2016, in which he threatened to cancel customer orders if he did not get paid what he thought he was owed. (*Id.* (citing ECF No. 1-5).)

The plaintiffs' response to the defendants' proposed finding of fact does not show that there exists a genuine dispute of fact on the question of whether Owens cancelled orders. The only evidence cited in their response is the emails in which Owens threatened to cancel orders. The defendants do not deny that Owens made these

8

threats. Their position is that he never acted on them by causing plaintiffs' customers to cancel their orders. The plaintiffs have not cited any evidence at all to support their allegation that Owens actually cancelled orders. They submit no declarations from customers in which the customers state that they cancelled orders based on Owens's statements to them. Instead, the plaintiffs merely assert, without citing any evidence, that the timing of certain cancellations they received coincided with Owens's threats to cancel orders.

For their part, the defendants have submitted uncontradicted evidence showing that the cancellations that actually occurred were spread evenly over a 10-month period between January and November 2016. (Compl. ¶ 45; Defs. Stmt. of Undisp. Facts ¶¶ 28–40, ECF No. 51.) They have also proposed as a fact that "[c]ancellations are an ordinary part of the footwear industry," and the plaintiffs have not disputed that fact. (Defs. Stmt. of Undisp. Fact ¶ 27.) Owens sent threatening emails on April 30, 2016 and November 11, 2016. The plaintiffs have not shown that there was an unusual spike in cancellations in the weeks after these emails were sent. Thus, the timing of the threats and the cancellations, standing alone, is insufficient to create a genuine dispute of fact on the issue of whether Owens actually cancelled orders.

Some evidence in the record supports the conclusion that, in October 2015, Owens rejected a proposal from Kohl's Department Stores to place Mojo Moxy shoes in its stores. (Decl. of Gary Van Ackeren, ECF No. 1-7.) However, this occurred well before Owens sent his threatening emails, and there is no evidence that he rejected the proposal in order to spite the plaintiffs. Instead, the record shows that Owens rejected the proposal for business reasons, namely, because he thought it was a bad deal.

(Defs. Stmt. of Undisp. Facts ¶¶ 43–51.) The plaintiffs have not argued that Owens lacked authority to reject the proposal for business reasons. Moreover, it is undisputed that Owens copied Greg Guerard, one of the owners of EastStar, on at least one email in which he stated his reasons for wanting to reject the order. (*Id.* ¶¶ 48–49.) Thus, the evidence in the record does not enable a reasonable jury to conclude that Owens rejected the Kohl's proposal out of spite or otherwise acted unlawfully in rejecting the proposal.

For the reasons stated above, I find that the evidence in the record does not enable a reasonable jury to find that Owens wrongfully cancelled orders. Because the plaintiffs' allegation of order-cancelling underlies all of their remaining claims, the defendants are entitled to judgment as a matter of law. Their motion for summary judgment will be granted.

I now turn to the plaintiffs' motion for summary judgment on the counterclaims. Their primary argument is that, throughout the length of their relationship with Owens, they provided him with monthly accountings reflecting the profits earned from the sale of Mojo Moxy shoes, and that he never disputed that the accountings were accurate. Therefore, the argument continues, Owens has waived any claim based on Cui's including a secret profit in the factory cost of the shoes.

Here I pause to note that the plaintiffs have not argued in their motion for summary judgment that a reasonable jury could not find that Owens's view of how the parties were supposed to split profits is correct. Although the plaintiffs do not believe that the parties formed a joint venture, they do not dispute that Owens was entitled to receive 30% of the profits earned on sales, either as a commission or as a share of the

joint venture's profits. (Decl. of Greg Guerard ¶ 9, ECF No. 31-2.) Moreover, the plaintiffs do not dispute that a reasonable jury could find that, under the parties' arrangement (whether that was a joint venture or something else), Cui was not entitled to add a profit margin to the cost of the shoes and that she was limited to receiving 50% of the profits from the sale of the shoes. Finally, the plaintiffs do not dispute that a reasonable jury could find that Cui in fact added a profit margin to the cost of the shoes. Indeed, the plaintiffs seem to concede that this is exactly what she did. (Decl. of Robert Steingart ¶¶ 4–5, ECF No. 31-5.) The plaintiffs' sole argument on the secret-profit claim is that Owens waived any claim that Cui was not entitled to receive this additional profit by not objecting to the monthly accountings.

I conclude that Owens did not waive his claim by not objecting to the accountings. As far as the record reveals, the accountings merely reported the unit cost of the shoes and did not further itemize how Cui arrived at that cost. In other words, there was no line item showing that Cui was adding a profit margin to the cost of the shoes. According to Owens, the parties' agreed that the unit cost would be nothing more than the cost that the factory charged for manufacturing the shoes. In his Civil Local Rule 56(b)(2)(B)(ii) statement of additional facts, Owens points to instances in which the plaintiffs represented to him that the costs of the shoes were reported as the factory prices and that Cui was not marking up the price for her own profit. (ECF No. 58 ¶¶ 34–46.) The plaintiffs did not file a response to this statement of additional facts, and therefore these facts are deemed admitted for purposes of summary judgment. Civil L.R. 56(b)(4). Thus, as far as the record reveals, when Owens received the monthly accountings, he reasonably understood them to mean that the costs reported were

based on factory prices alone and did not include a profit margin for Cui. Owens states that he learned for the first time during discovery in this case that the costs in fact included a profit margin for Cui.[2]

Under these circumstances, Owens cannot be deemed to have waived his claims. Waiver is the intentional relinquishment of a known right. *See, e.g., Brunton v. Nuvell Credit Corp.*, 325 Wis. 2d 135, 156–57 (2010).[3] The Wisconsin Supreme Court has held that a person does not waive a right when he or she does not have knowledge, either actual or constructive, of the existence of a material fact at the time of the purported waiver. *Nolop v. Spettel*, 267 Wis. 245, 249 (1954). In the present case, the plaintiffs have not pointed to facts suggesting that Owens had actual knowledge that Cui was adding a profit margin to the cost of the shoes at the times he received the monthly accountings. Nor have the plaintiffs developed an argument showing that Owens had constructive knowledge that Cui was adding a profit margin. Rather, it is undisputed that the plaintiffs represented to Owens that the unit cost was simply the cost that the factory charged for the shoes. (Def. Stmt. of Add'l Facts ¶ 39.) Thus, the plaintiffs are not entitled to summary judgment on those counterclaims that are based on the allegation that Cui secretly added a profit margin to the unit cost of the shoes.

The remaining counterclaim relates to Owens's share of the profits for October 2016 and for orders that were in process at the time that he quit. The plaintiffs move for summary judgment on the theory that Owens has claimed a right to "perpetual commissions" under a written operating agreement. (Pls. Br. in Supp. at 1, ECF No 32-

---

[2] Although Owens accused Cui of stealing from the joint venture before he filed this suit, his accusations of theft at that time were apparently based on something other than the profit margin that he learned about during discovery.

[3] The parties agree that Wisconsin substantive law applies to this dispute.

1.) This operating agreement, for an entity called MM Enterprises, LLC, was signed by the parties but undated. (Countercl. Ex. A, ECF No. 8-1.) The entity was never formed. Owens contends that this operating agreement was intended to govern the parties' joint venture involving the sale of Mojo Moxy shoes. However, the terms of the operating agreement do not support his argument. As noted, it pertains to an entity that the parties never formed, and the purpose of the entity, as described in the operating agreement, was to "hold and license intellectual property" identified in an exhibit to the agreement. (Agreement § 1.3.) It thus appears that the operating agreement was intended to govern the parties' use of their intellectual property. It contains no terms relevant to the actual sale of Mojo Moxy shoes.

However, even if the operating agreement does not contain the terms of the parties' arrangement for selling shoes, there is no dispute that Owens was either a member of a joint venture or a sales representative for the plaintiffs and was entitled to 30% of the profits on shoe sales. As such, he could be entitled to additional payments relating to profits that were earned after September 2016, the last month for which he received a payment from the plaintiffs. The plaintiffs have not developed an argument showing that Owens is not entitled to 30% of the profits for October 2016, a month in which Owens was still in charge of sales for the plaintiffs. Moreover, under agency law, Owens may be entitled to commissions or profits on orders that he procured, but which were not completed, until November or later. *See Zweck v. D.P. Way Corp.*, 70 Wis. 2d 426, 430–31 (1975) (recognizing "the general rule that a selling agent earns his commission when he procures an order from a ready, willing, and able purchaser, and this order is received by the company" even if the agency relationship is terminated

before payment is made). Accordingly, the plaintiffs are not entitled to summary judgment on Owens's claim for unpaid commissions or profits for the month of October 2016 and later.

## IV. CONCLUSION

For the reasons stated, **IT IS ORDERED** that the plaintiffs' motion for summary judgment on the defendants' counterclaims (ECF No. 32) is **DENIED**.

**IT IS FURTHER ORDERED** that the defendants' motion for summary judgment on the plaintiffs' claims (ECF No. 49) is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiffs' motion for reconsideration based on newly discovered evidence (ECF No. 81) is **DENIED**.

**FINALLY, IT IS ORDERED** that the plaintiffs' motion for relief pursuant to Rule 17(a) (ECF No. 82) is **DENIED**.

Dated at Milwaukee, Wisconsin, this 25th day of June, 2018.

<pre>
                              s/Lynn Adelman_____
                              LYNN ADELMAN
                              District Judge
</pre>